Pearson, J.
 

 There is manifest error in the first proposition of law laid down by his Honor.
 
 “
 
 If the prisoner willingly entered into the fight, and during its progress,
 
 however sorely he might depressed,
 
 stabbed the deceased as described by the witnesses, his offense, at least, would be manslaughter.”
 

 By
 
 sorely pressed,
 
 we understand
 
 "being put to the wall,
 
 or placed in a situation where he must be killed or suffer great bodily harm, or take the life of his adversary. Supposing there was evidence to raise this point, the offense, according to all the authorities, was excusable homicide, which Foster calls
 
 self-defense eulpdble,
 
 but through the benignity of the law, excusable; Foster’s C. L. 273-4; 1 East’s Cr. L. 279 ; 4 Blk. Com. 184; 1 Hale 482. Indeed, as the deceased made the first assault with a deadly weapon, i. e.,
 
 “
 
 a stone about the size of a goose egg” — threw with violence at a short distance, and followed it up by pushing the prisoner against the jam of the fence, gave him two blows, and then caught him with
 
 *221
 
 bis- band about the month, having him against the fence, bent over on the side, before the prisoner struck him at all, if the necessity for killing existed, which his Honor assumed, it would seem to have been rather a case
 
 oí. justifiable
 
 homicide.
 

 There is a further error in this proposition : his Honor charged that the offense was,
 
 'at
 
 least, manslaughter, empha-sising the words
 
 at least.
 
 This left the jury uninstructed as to whether, in the opinion of his Honor, it was manslaughter or murder, and they had reason to infer that he inclined to the opinion that it was murder, taking the case in its most favorable aspect. It was'error to leave the jury in this state of uncertainty. At all events, it prepared the minds of the jury to lean against the prisoner in the next aspect in which the case was presented.
 

 It was said in the argument for the State, that as the jury found the defendant guilty of murder, which it was assumed they did upon the second aspect in which the case was presented, this error was harmless; and-it was likened to a finding in'a civil action, where the “general issue” and “justification” are pleaded, and the jury find for the defendant, upon the “ general issue,” which makes an error in the charge upon the plea of justification immaterial, so that it is not a sufficient ground for granting a
 
 verii/re de novo.
 
 The cases are not precisely analogous. In the latter, there are two independent pleas, and the matters are distinct and can easily be kept separate. Here, there is but-one' plea, and it was difficult to keep the matters separate. In fact, there is no telling to what extent the jury, in considering the case in the second aspect in which it was presented, were influenced by the error in regard to the first. If the offense was in no aspect excusable homicide, and in the most favorable aspect,
 
 at
 
 least, manslaughter, who can say that the jury did not find the prisoner guilty of murder upon the first aspect ? His Honor left the way open, and it may be that the consideration of the case in the second aspect, without satisfying them that it was the true view, had the effect of bringing-their minds to the conclusion, that the prisoner was guilty of murder upon the first aspect;
 
 *222
 
 or, at any rate, of getting tbe matter so mixed up, that they had no distinct idea, or agreement among themselves, whether they found him guilty of murder, because, having entered into the fight willingly, he inflicted so horrible a stab with the knife, or because they were satisfied, from the evidence, that “
 
 before entering into the fight he had formed a deliberate purpose to bring about a fight a/nd use his l&nifeP
 

 That this is the most reasonable way of accounting for the verdict which was given after much hesitation, is confirmed by the fact, although we are not at liberty to say there was no evidence, yet, the evidence was certainly very slight that the prisoner had formed a deliberate purpose to bring about a fight and use his knife. It is true, while they were
 
 holding him
 
 in the piazza, he flourished his knife, and swore “ one of us has to die before sun-set;” but every one who has witnessed scenes of this kind, knows that such “ rearing and charging and popping of fists,” are far from evincing a deliberate purpose, particularly when the opponent is a much stouter and more able-bodied man. The barking of a dog shows that he thinks it safer to
 
 barlt
 
 than to
 
 bite.
 

 As to bringing about the fight, the deceased bantered him, and said if he .would come out he would whip him; the prisoner said he would go,
 
 although there was a whole parcel of
 
 them, (from this it would seem he had but little stomach for the fight,) to which the deceased replied very insultingly, and made the onset with the stone. It should be borne in mind, that the prisoner and the deceased were before that day friendly; commenced • drinking as friends. The prisoner wished to go to his work, but was persuaded by the deceased to continue in the carouse, and it was not until after they talked about hitting each other in the face, that the prisoner used such furious language. 'Whether they had hit each other in the face, does not appear; but something occurred which made the prisoner very angry. If he was hit in the face, then the oath that “ one must die before sun-set,” amounts to nothing, because it was the effect of passion. If he had struck a mortal blow, the killing would have been
 
 *223
 
 manslaughter, and surely, words spoken in a passion, induced by legal provocation, ought not to have more effect than a mortal blow. "We think the prisoner is entitled to have his case submitted to another jury.
 
 Venwe de novo.
 

 Pee Cttetaw. * Judgment reversed.